IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02072–KMT

REMELL F. ALEXANDER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Remell F. Alexander's application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant applied for SSI in December 2010, alleging that she had been disabled by brain aneurysms since October of that same year. (*See* Doc. No. 11, Social Security Administrative Record ["AR"] at 105, 123.) The Commissioner denied her application. (*Id.* at 55.) Following that denial, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 25–44, 59.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was capable of substantial gainful activity in the national economy despite the limitations imposed by her impairments. (*Id.*

at 20–21.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Title XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. § 1382. To receive SSI, a claimant must be disabled. § 1382(a). The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the

Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and case law. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

Claimant alleges the ALJ erred in four ways. First, Claimant argues the ALJ failed to weigh the opinions of Dr. Valette, an examining psychologist. (*See* Doc. No. 14 [Opening Br.] at 17, 37–40, filed Jan. 16, 2015.) Second, Claimant contends that the ALJ failed to properly assess the opinion of another doctor, Dr. Davidson, the claimant's treating physician. (*See id.* at 17, 40–43.) Third, Claimant contends the ALJ's Residual Functional Capacity ("RFC") assessment is legally deficient because it "is not stated on a function-by-function basis." (*See id.*

at 16, 21–32.)  Fourth, Claimant argues the ALJ failed to account for the claimant's headaches. (*See id.* at 16–17, 33–37.)

### Weighing Dr. Valette's Opinions

In the ALJ's written decision, the ALJ discussed the opinions of Dr. Valette, a consultative examining psychologist.  (*See* AR at 14.)  Claimant contends that the ALJ failed to weigh some of these opinions.  (*See* Opening Br. at 15–26.)

The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  The ALJ is required to evaluate every medical opinion he or she receives.  20 C.F.R. § 416.927(c).  Medical source opinions are opinions about the nature and severity of an individual's impairments.  20 C.F.R. § 404.1527(a)(2); SSR 96-2P, 1996 WL 374188, at *2.  Generally, a claimant's treating physician's opinion is afforded the most weight of any medical opinion.  *See* 20 C.F.R. § 404.1527(c)(2).  Examining source opinions are also typically afforded more weight than non-examining sources, and non-examining sources are usually afforded the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  *See also* 20 C.F.R. § 404.1527(c)(1).  When deciding how much weight to assign a non-controlling medical source's opinion, the ALJ must consider six factors:

   (1) the length of the treatment relationship and the frequency of examination;

   (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

   (3) the degree to which the physician's opinion is supported by relevant evidence;

   (4) consistency between the opinion and the record as a whole;

>   (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
>   (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c), 416.927.  Then, in the ALJ's written decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the opinion and why.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003)*; Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).  The ALJ must consider these six factors, but need not discuss each of them.  *Watkins*, 350 F.3d at 1300–01 *(*quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In this case, the ALJ relied, at least in part, on the findings of Dr. Valette at step two of the ALJ's disability review.  (*See* AR at 14, 16.)  In the step-two section of the ALJ's written decision, the ALJ summarized Dr. Valette's consultative psychological examination, beginning with a summary of the claimant's self-reported symptoms, complaints, and activities.  (*See id.* at 14.)  The ALJ then noted the results of Dr. Valette'e psychological testing, including Dr. Valette's observation that the claimant "is showing significant impairment in and difficulties in visual working memory, and . . . is showing mild to moderate impairments in processing speed." (*Id.*)  Overall, Dr. Valette reported that the claimant was, in the words of the ALJ, "functioning in the low end of the low-average range of intellectual ability," had "adjustment disorder with depressed mood, and nonspecific cognitive disorder, secondary to aneurysm." (*Id.*)  The ALJ noted that Dr. Valette assigned the claimant a GAF score of 60 to 65, indicating "some mild symptoms or some difficulty in social or occupational functioning." (*Id.*)  At one point, the ALJ asserted that Dr. Valette "did not render an opinion of the claimant's ability to perform basic

5

work-related activities on a function-by-function basis." (*Id.*)  Later on, but still in the step-two section of the ALJ's written decision, the ALJ concluded, "[b]ased on Dr. Valette's diagnosis, the claimant has mental impairments" listed in Appendix I "and has, therefore, medically determinable impairments." (*Id.* at 16.)  The ALJ explained that, "as Dr. Valette feels that these impairments cause more than minimal functional limitations, they are considered severe" at step two of the disability review process. (*Id.*)  The ALJ did not reference or discuss Dr. Valette's findings or opinions anywhere else in the ALJ's written decision. (*See id.* at 18–21.)

There is no dispute that Dr. Valette is a valid medical source, nor is there any dispute that Dr. Valette offered opinions. (*See* Doc. No. 15 [Resp. Br.] at 15–18 [referring to Dr. Valette's opinions and stating that he "opined"], filed Feb. 19, 2015.)  Instead, the dispute centers around whether the ALJ should have analyzed Dr. Valette's opinions as "medical opinions" and assigned them some kind of weight. (*Compare* Opening Br. at 38–40 [calling Dr. Valette's opinions medical opinions] *with* Resp. Br. at 15–18 [arguing that Dr. Valette's opinions are not medical opinions].)

Whether Dr. Valette's opinions are "medical opinions" depends on whether those opinions "reflect judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2).  In SSR 96-2p, the Commissioner affirmed this definition, stating that medical opinions "are opinions about the nature and severity of an individual's impairment(s) . . . ." SSR 96-2P, 1996 WL 374188, at *2;  20 C.F.R. § 404.1527(a)(2).  If Dr. Valette's opinions are medical opinions, then the ALJ was required to, at a minimum, expressly state the weight he assigned those opinions and why.  *See Watkins*, 350 F.3d at 1300–01*; Keyes-Zachary*, 695 F.3d

at 1161; *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1170 (D. Colo. 2012); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

The defendant argues that the Dr. Valette's opinions were not medical opinions because Dr. Valette "did not provide any opinion as to how Plaintiff's mental impairments would affect her work-related functional abilities." (*See* Resp. Br. at 16.) As support for this proposition, the defendant cites *Cowan v. Astrue*. 552 F.3d 1182, 1189 (10th Cir. 2008). The defendant argues that *Cowan* holds that a "statement providing no information about the nature and severity of the claimant's physical activities or the activities he could still perform was not a medical opinion." (*See* Resp. Br. at 16). The court disagrees with this interpretation of *Cowan*. In *Cowan*, the Court held that a doctor's statement that "[the claimant] had a stroke and I feel he may never return to work" was not a true medical opinion under the Commissioner's regulations because it was too ambiguous and too tentative to constitute a judgment or an opinion. *See Cowan*, 552 F.3d at 1189. Though the *Cowan* Court said that the doctor's statement "did not contain [the doctor's] judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform," *id.* at 1189, the Court based its opinions on the Commissioner's regulations, *see id.*, which plainly state that medical opinions are "opinions about the nature and severity of an individual's *impairment(s)*" not *functional limitations,* 20 C.F.R. § 404.1527(a)(2) (emphasis added). Impairments may lead to functional limitations, but the two are not the same. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.")

The GAF score Dr. Valette assigned the claimant is, by definition, a subjective opinion about the severity of the claimant's mental impairments. *See Groberg v. Astrue*, 415 F. App'x 65, 72 n.1 (10th Cir. 2011) ("The GAF is a *subjective* determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.") (emphasis added) (internal citations and quotations omitted). The score shows that Dr. Valette believed the claimant's overall mental functioning was mildly impaired. *Compare id.* at 69 (explaining that a GAF score of 61 to 70 indicates mild limitations) *with* AR at 14 (scoring the claimant's GAF as 60 to 65). The Tenth Circuit has held that a GAF score by a treating physician is a medical opinion, and this court sees no reason that the same holding would not apply to an examining physician. *See Givens v. Astrue*, 251 F. App'x 561, 567 (10th Cir. 2007).

Dr. Valette's opinion that the claimant's visual working memory and processing speed were significantly impaired also constitutes a medical opinion. The opinion reflects the doctor's judgment about the severity of two of the claimant's mental impairments, her visual memory and processing speed. Moreover, this is an opinion about the kind of impairments that, despite the ALJ's conclusion otherwise (*see* AR at 14), could affect the claimant's "basic work-related activities" and, therefore, the claimant's RFC. At least one district court has held that "medical findings which impact the RFC" are medical opinions under the Commissioner's regulations. *See, e.g.*, *Richardson*, 858 F. Supp. 2d at 1170. Without knowing the weight the ALJ assigned this opinion, the court is unable to assess whether the ALJ appropriately accounted for these impairments at steps four and five. (*See* Opening Br. at 39–40.)

Under the Commissioner's rules and regulations, and applicable case law, Dr. Valette's opinions are medical opinions that the ALJ was required to weigh. The ALJ's failure to explicitly state the weight he assigned those opinions is error. Nevertheless, not all errors merit reversal. *See, e.g., Keyes-Zachary*, 695 F.3d at 1162 (affirming the ALJ's decision after rejecting as harmless the ALJ's failure to state the weight of several medical expert opinions). An error is harmless if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the ALJ's failure to assign any weight to Dr. Valette's GAF scores is harmless. Not only did the ALJ rely on Dr. Valette's opinions to find in favor of the claimant at step two (*see* AR at 16), the GAF scores reflected only mild limitations in the claimant's overall mental functioning (*see id.* at 17–19), something the ALJ clearly addressed and incorporated at steps three and four of the ALJ's decision.

The same cannot be said for Dr. Valette's medical opinion that the claimant's visual working memory and processing speed were significantly impaired. Even if the ALJ did rely upon this opinion at step two, the ALJ's steps three and four RFC analyses either conflict with or are silent on the claimant's visual working memory and processing speed. (*See id.*) The RFC contains no limitations related to the claimant's visual working memory and processing speed, and the ALJ affords weight to the opinion of a non-examining doctor who opined that the claimant had, at most, only moderate (as opposed to "significant") limitations in mental functioning. (*See id.*) The ALJ did accept the non-examining doctor opinion that the claimant cannot perform work involving "significant complexity or judgment," but there is no indication that this limitation relates to Dr. Valette's opinion about visual working memory and processing

9

speed. As a result, the court cannot say with confidence that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. The court therefore finds that the ALJ's failure to weigh Dr. Valette's opinion about visual working memory and processing speed to be reversible error.

The court does not reach or address Claimant's remaining arguments. The issues raised in those arguments may be resolved by reconsideration and rehearing.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner. It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 23rd Day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge